UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-63173-CIV-ALTMAN/Hunt

SPECIALIZED BICYCLE COMPONENTS, INC.,

     *Plaintiff,*

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

     *Defendants.*

_____/

## SEALED ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

**THIS MATTER** comes before the Court on the Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Application") [ECF No. 6]. The Plaintiff, Specialized Bicycle Components, Inc. ("Plaintiff") moves, *ex parte*, for entry of a temporary restraining order against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The Court has carefully considered the Motion, the record, and the governing law. For the reasons stated below, the Plaintiff's *Ex Parte* Application for Temporary Restraining Order [ECF No. 6] is **GRANTED**.

## I.   Factual Background[1]

Plaintiff is the owner of the following trademarks, which are valid and registered on the

Principal Register of the United States Patent and Trademark Office ("Specialized Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| SPECIALIZED | 1,378,009 | January 14, 1986 | IC 012; bicycle components and accessories; namely, tires, cables, tubes, cable housings, handle bars, stems, frames, stayguards. |
| | 1,515,498 | December 6, 1988 | IC 025; Bicyclists' Shoes and Clothings, Namely Shorts, Socks, and Jerseys. |
| SPECIALIZED | 1,529,532 | March 14, 1989 | IC 009; Protective helmets for bicyclists |
| BODY GEOMETRY | 2,427,076 | February 6, 2001 | IC 028. bicycle gloves. |
| TARMAC | 2,854,592 | June 15, 2004 | IC 12; Bicycles. |
| S-WORKS | 2,940,114 | April 12, 2005 | IC 012; bicycles and bicycle frames. |
| ROVAL | 2,955,370 | May 24, 2005 | IC 012. Bicycle parts, namely wheels. |
| | 3,183,096 | December 12, 2006 | IC 012; Bicycles, and bicycle parts and accessories, namely, bicycle frames, bicycle pumps, inner tubes, tires, saddles, handlebar grips, handlebar safety pads, handlebars, handlebar tape, brake levers, handlebar stems, seat posts, and water bottle cages. |

---

[1] The factual background is taken from the Plaintiff's Complaint, *Ex Parte* Application for Temporary Restraining Order, and supporting Declarations submitted by the Plaintiff.

| | | | |
|---|---|---|---|
| | 3,290,139 | September 11, 2007 | IC 009; Bicycle helmets; computing devices for bicyclists to measure time, distance, and velocity. |
| S-WORKS | 3,290,140 | September 11, 2007 | IC 025. Bicyclists' shoes and clothing, namely, shorts and jerseys |
| SPECIALIZED | 3,942,515 | April 12, 2011 | IC 025; Bicyclists' shoes and clothing, namely, shorts, socks and jerseys. |
| S-WORKS | 3,957,466 | May 10, 2011 | IC 009; For protective clothing, footwear and headgear for wear by bicyclists for protection against accident or injury; cycling helmets. |
| | 3,988,743 | July 5, 2011 | IC 025. Bicycle gloves |
| | 3,989,153 | July 5, 2011 | IC 009; Protective body armor. IC 025; Clothing, namely, shirts, t-shirts, tops, base layers, jackets, jerseys, shorts, padded shorts, pants, sweat pants, tights, vests, socks, arm warmers, knee warmers, headwear, and footwear. |
| VENGE | 4,016,727 | August 23, 2011 | IC 012. Bicycles and bicycle frames. |
| SPECIALIZED | 4,019,602 | August 30, 2011 | IC 025; Clothing, namely, footwear, shirts, t-shirts, tops, socks, jackets, base layers, shorts, padded shorts, pants, sweat pants, tights, vests, arm warmers, knee warmers, headwear, gloves, namely, cycling gloves and outdoor gloves. |
| *S-WORKS* | 4,254,076 | December 4, 2012 | IC 012. Bicycles and bicycle frames |

(*See* Declaration of Andrew Love in Support of Plaintiff's Application for Temporary Restraining Order ("Love Decl.") ¶ 4; *see also* United States Trademark Registrations for the Specialized Marks at issue attached as Composite Exhibit 1 to the Complaint.) The Specialized Marks are used

in connection with the design, marketing, and distribution of high-quality goods in the category identified above. (*See id*.)

The Defendants, through the various Internet based e-commerce stores and fully interactive, commercial Internet websites operating under the seller identities or domain names identified on Schedule "A" hereto (the "Seller IDs and Subject Domain Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Specialized Marks. (*See* Love Decl. ¶¶ 11-14; Declaration of Virgilio Gigante in Support of Plaintiff's Application for Temporary Restraining Order ("Gigante Decl.") ¶ 2; Declaration of Kathleen Burns in Support of Plaintiff's Application for Temporary Restraining Order ("Burns Decl.") ¶ 4).

Although each of the Defendants may not copy and infringe each of the Specialized Marks for each category of goods protected, the Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one or more of the Specialized Marks. (*See* Love Decl. ¶¶ 11-14.) The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Specialized Marks. (*See id.* at ¶¶ 11, 14.)

The Plaintiff's counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded products by the Defendants. (*See* Love Decl. ¶ 12; Burns Decl. ¶ 3; Gigante Decl. ¶ 2.) Invisible accessed each of the e-commerce stores and commercial websites operating under the Defendants' Seller IDs and Subject Domain Names, placed an order for the purchase of a product from each of the Seller IDs and Subject Domain Names, bearing counterfeits of, at least, one of

the Specialized Marks[2] at issue in this action, and requested each product to be shipped to Invisible's addresses in the Southern District of Florida. (*See* Burns Decl. ¶ 4.)   Each order was processed entirely online, and following submission of the orders, Invisible finalized payment[3] for the Specialized branded items ordered from the Defendants to the Defendants' respective payment accounts and/or payee[4] as identified on Schedule "A" hereto.[5]   (*Id.*)   At the conclusion of the

---

[2] Defendant Numbers 23-28 and 57-62 blurred-out and/or physically altered images of Plaintiff's trademarks on the products being offered for sale via their respective e-commerce stores.  (*See* Burns Decl. ¶ 4, n.1.)  Invisible sent messages to these Defendants via their respective onsite contact forms requesting additional images of the products offered for sale to verify these products bear the Plaintiff's trademarks in their entirety. (*See id.*)  The additional images and links to additional images received by Invisible bearing the Plaintiff's trademarks in their entirety were sent to the Plaintiff's representative for review. (*See id.*)

[3] Invisible was instructed not to transmit the funds to finalize the sale for the orders from Defendant Numbers 12-28 and 53-62, so as to avoid adding additional money to the Defendants' coffers. (*See* Gigante Decl. ¶ 2, n.1; Burns Decl. ¶ 4, n.2.)

[4]   Defendant Numbers 1-28 operate via the non-party Internet marketplace platform, DHgate.com, which processes its payments via the third-party platform, DHpay.com. (*See* Gigante Decl. ¶ 4; Burns Decl. ¶ 4, n.3.)  The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (*See* Gigante Decl. ¶ 4.)

Defendant Numbers 29-50 operate via the non-party e-commerce marketplace platform Joom.com, which is operated by SIA Joom. "Joom USA Inc" was identified as the PayPal payee for my firm's orders from Defendant Numbers 29-50. (*See* Burns Decl. ¶ 4, n.3.) "Joom USA Inc" is the named PayPal recipient for individual transactions conducted with Defendants operating via Joom.com. (*See id.*)

Defendant Numbers 51-65 operate via the non-party Internet marketplace platform, AliExpress.com, and have their payments processed on their behalf using Alipay.  (*See* Burns Decl. ¶ 4 n.3; Gigante Decl. ¶ 6.) As such, the Defendants' payment information is not publicly disclosed. (*See id.*) Defendant Number 63-65 also uses money transfer and retention services with PayPal as an alternative payment method. (*See* Burns Decl. ¶ 4, n.3.)

Defendant Numbers 66-90 use money transfer and retention services with PayPal. (*See* Burns Decl. ¶ 4 n.3; Gigante Decl. ¶ 7.)

[5] Additional contact email addresses for the Defendants are also identified on Schedule "A" hereto. (*See* Burns Decl. ¶ 4, n.4.)

process, the detailed web page captures and images of the Specialized branded items offered for sale and ordered via the Defendants' Seller IDs and Subject Domain Names, together with photographs of the some of the items Invisible received, were sent to the Plaintiff's representative for review. (*See* Love Decl. ¶¶ 13; Burns Decl. ¶ 4; Gigante Decl. ¶ 2.)   The Plaintiff's representative conducted a review and visually inspected the Specialized branded items Invisible ordered via the Seller IDs and Subject Domain Names and determined the products were non-genuine, unauthorized versions of the Plaintiff's products. (*See* Love Decl. ¶¶ 3, 14.)

## II.   <u>Legal Standard</u>

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

### III.     Conclusions of Law

The declarations the Plaintiff submitted in support of its *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A.     The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Specialized Marks, and that (2) the products Defendants are selling and promoting for sale are copies of the Plaintiff's products which bear copies of the Specialized Marks.

B.     Because of the infringement of the Specialized Marks, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers before the Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted:

1.     The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights;

2.     There is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

3. There is good cause to believe that, if the Plaintiff proceeds on notice to the Defendants of this Application for Temporary Restraining Order, the Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names and domain names, and transfer assets and ownership of Seller IDs and Subject Domain Names, thereby thwarting the Plaintiff's ability to obtain meaningful relief.

C. The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

D. The public interest favors issuance of the temporary restraining order to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E. Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the Specialized Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of

permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.      In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained,

Upon review of the Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, the Court hereby

**ORDERS AND ADJUDGES** that the Plaintiff's *Ex Parte* Application for Temporary Restraining Order [ECF No. 6] is **GRANTED**, under the terms set forth below:

(1)      Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

a.   From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Specialized Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff; and

b.   From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Specialized Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Specialized Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

(2)      Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having

notice of this Order shall immediately discontinue the use of the Specialized Marks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores and websites owned and operated, or controlled by them, including the Internet based e-commerce stores and websites operating under the Seller IDs and Subject Domain Names.

(3)     Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Specialized Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores and websites registered, owned, or operated by each of the Defendants, including the Internet based e-commerce stores and websites operating under the Seller IDs and Subject Domain Names.

(4)     Each of the Defendants shall not transfer ownership of the Seller IDs and Subject Domain Names during the pendency of this action, or until further Order of the Court.

(5)     Each of the Defendants shall preserve copies of all computer files relating to the use of any of the Seller IDs and Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs and Subject Domain Names that may have been deleted before the entry of this Order.

(6)     Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com

platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), PayPal, Inc. ("PayPal"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, and SIA Joom, which operates the Joom.com platform ("Joom"), and their related companies and affiliates shall (i) immediately identify all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

(7)     Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services, Alipay, Worldpay, PayPal, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, Joom, and their related companies and affiliates, shall further, within five business days of receiving notice of this Order, provide the Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been

restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Worldpay, PayPal, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, Joom, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(8)     Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(9)     This Order shall apply to the Seller IDs and Subject Domain Names, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the Specialized Marks at issue in this action and/or unfairly competing with Plaintiff.

(10)    This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

(11)    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's

discretion, the bond may be subject to increase should an application be made in the interest of justice.

(12)    A **hearing** is set before this Court in the United States Courthouse located at 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, Courtroom 207A, on **January 16, 2020, at 10:15 A.M.**, at which time the Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiff's requested preliminary injunction.

(13)    After the Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, the Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores and websites operating under the respective Seller IDs and Subject Domain Names, or by providing a copy of this Order by e-mail to the registrar of record for each of the Subject Domain Names or the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, the Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at http://servingnotice.com/Ip2j6n/index.html[6] and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be

---

[6] In this Circuit, Rule 65 has been interpreted to require that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978); *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 2008)

deemed good and sufficient service thereof.  The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at http://servingnotice.com/Ip2j6n/index.html, or by other means reasonably calculated to give notice which is permitted by the Court

(14)    Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace platform, and/or financial institutions, payment processors, banks, escrow services, and money transmitters, including but not limited to AliExpress.com, Ant Financial Services, Alipay, Worldpay, DHgate.com, eBay.com, PayPal, Joom, and their related companies and affiliates shall, at the Plaintiff's request, provide the Plaintiff's counsel with any e-mail address known to be associated with the Defendants' respective Seller IDs.

(15)    Any response or opposition to the Plaintiff's Motion for Preliminary Injunction must be filed and served on the Plaintiff's counsel by January 14, 2020.  The Plaintiff shall file any Reply Memorandum on or before January 15, 2020. The above dates may be revised upon stipulation by all parties and approval of this Court.

(16)    The Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d); Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a); and this Court's inherent authority.

(17)    The Clerk shall file this Order under seal until further order of the Court.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 7th day of January 2020.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        Sealed clerk

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME, STORE**
**NUMBER, ASSOCIATED PAYMENT ACCOUNT AND ADDITIONAL E-MAIL**

| Defendant Number | Defendant / Seller ID / Subject Domain Name | Store Number / Payment Account | Additional E-mail Address |
|---|---|---|---|
| 1 | Cycling_k | 18306253 | |
| 2 | Comeonboy | 21281105 | |
| 3 | Emmanue | 20298212 | |
| 4 | Jerseys_linda | 21256948 | |
| 5 | Guchunhua | 20083936 | |
| 6 | Kevin_echo04 | 21029127 | |
| 7 | Pro_sports | 21359664 | |
| 8 | s9dx97glb | 20723262 | |
| 9 | specializedzippceve0 | 20083991 | 63327568@qq.com |
| 10 | Teahong | 21084295 | |
| 11 | Wanjia55 | 15852262 | |
| 12 | Barbiestrong | 17925551 | |
| 13 | Bike98 | 20650880 | tina@oem-taiwan.com |
| 14 | carbonbicyclefactory | 19775393 | |
| 15 | Cocobike | 20941910 | |
| 16 | Cyclingelite | 19862979 | |
| 17 | Darcie888 | 20757892 | |
| 18 | Ebuycycling | 19674873 | |
| 19 | Erikokirk | 17926452 | |
| 20 | Ly111111 | 21412713 | |
| 21 | Opicchen | 20036933 | |
| 22 | rainharvardroad777 | 19994573 | |
| 23 | Bike777 | 14240150 | |
| 24 | Bike92 | 20651981 | |
| 25 | Carbonbike88 | 19808276 | blueskywonderful@126.com |
| 26 | Lansno | 20442851 | dora@haleylan.com |
| 27 | Oem_taiwan | 20749864 | tina@oem-taiwan.com |
| 28 | Topeisen | 21371460 | |
| 29 | Akoe02 | Joom USA Inc | |
| 30 | Apologize too late | Joom USA Inc | |
| 31 | dfghgddfd | Joom USA Inc | |
| 32 | GPT | Joom USA Inc | |
| 33 | H Outdoor sports equipment | Joom USA Inc | |
| 34 | Jooly | Joom USA Inc | |

| 35 | Kirara | Joom USA Inc | |
| 36 | Maysh | Joom USA Inc | |
| 37 | mcv65h | Joom USA Inc | |
| 38 | Nasha | Joom USA Inc | |
| 39 | Passion Angle | Joom USA Inc | |
| 40 | smart cool | Joom USA Inc | |
| 41 | Sook | Joom USA Inc | |
| 42 | Sport World | Joom USA Inc | |
| 43 | Tarke | Joom USA Inc | |
| 44 | twentytwo0306 | Joom USA Inc | |
| 45 | Watti | Joom USA Inc | |
| 46 | WETO | Joom USA Inc | |
| 47 | X-KL | Joom USA Inc | |
| 48 | Yette | Joom USA Inc | |
| 49 | Yoland | Joom USA Inc | |
| 50 | Youmei-1 | Joom USA Inc | |
| 51 | Shop4508016 Store | 4508016 | |
| 52 | Shop4993354 Store | 4993354 | |
| 53 | 10 years specialty Store | 5140048 | |
| 54 | Factory direct operation Store | 5058356 | |
| 55 | Inequable Store | 4664021 | tina@oem-taiwan.com |
| 56 | Taiwan Bike Factory Store | 2413117 | dora@haleylan.com |
| 57 | cheap carbon factory Store | 4431120 | mark@haleylan.com |
| 58 | High quality carbon factory Store | 4403032 | gmf@haleylan.com |
| 59 | Jenson carbon bike Store | 5381335 | grace@oem-taiwan.com |
| 60 | OBM / ODM Cycling Bike Store | 1938991 | |
| 61 | Pawcarbon bike Store | 3042012 | pawcarbonbike@outlook.com |
| 62 | taiwan eisen bike Store | 5257218 | taiwaneisenbike@163.com |
| 63 | Cycling 1982 Store | Store No. 4674056 fubing0606@foxmail.com | |
| 64 | cycling jersey custom's Store | Store No. 4057081 2993097680@qq.com | |
| 65 | FUN GEAR Store | Store No. 5048174 longjianglxq001@163.com | |
| 66 | 4r10hanggara | b3rharap5elalu@gmail.com | |
| 67 | abaid39 | ramad.hani@yahoo.com | |
| 68 | alfianadsaputr0 | alfadi.saput@gmail.com | |

| 69 | arifmangon-15 | arifsupriyono15c@gmail.com | |
| 70 | disaneko | LushDriving9@outlook.com | |
| 71 | dwi-30 | dwinurkhasanah30p@gmail.com | |
| 72 | ezpatern | monalisamiss2801@gmail.com | |
| 73 | fredand_0 | merlina.nina8795@gmail.com | |
| 74 | gugukemban0 | d11replace@yahoo.com | |
| 75 | i13wol-19 | i13wolusongo@yahoo.com | |
| 76 | jia_qs9lulmd | jiangjunling670711@outlook.com | |
| 77 | lalopolrohk | AwfulBucket6@outlook.com | |
| 78 | lh7026181-1 | lh7026181@gmail.com | |
| 79 | mal_id2015 | ati.suek@gmail.com | |
| 80 | muhaari-29 | muhammadaripinnow@gmail.com | |
| 81 | nice_shirtee | KellyAngieAudy@outlook.com | |
| 82 | proda_15 | produkdalam@gmail.com | |
| 83 | sadgfudi0 | kumpulansatu@outlook.co.id | |
| 84 | syakhu-0 | SyafiulKhuluq@outlook.com | |
| 85 | tamram_0 | kursimerah52@gmail.com | |
| 86 | yongliusheng2011 | yongshengliu2011@hotmail.com | |
| 87 | cyclingeasy.com | 76839807@qq.com | web@CyclingEasy.com info@SendCloud.CyclingStyle.com |
| 88 | dailygifthub.com | support@dailygiftshop.com | iwatchone@gmail.com |
| 89 | allstarbicycle.com | | Jeffrey6869@gmail.com allbestbicycle@gmail.com |
| 90 | oem-taiwan.com | | ferd@oem-taiwan.com carina@oem-taiwan.com |